UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| JAMES ROBINSON, | |
|---|---|
| Plaintiff, | No. 18-CV-2409 (KMK) |
| v. | OPINION & ORDER |
| JANICE LYNN WOLF-FRIEDMAN, *et al.*, | |
| Defendants. | |

Appearances:

James Robinson
Elmira, NY
*Pro Se Plaintiff*

Jennifer Rose Gashi, Esq.
State of New York Office of the Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff James Robinson ("Plaintiff"), currently incarcerated at Elmira Correctional Facility ("Elmira"), brings this pro se Action against Dr. Janice Lynn Wolf-Friedman ("Dr. Wolf-Friedman"); Dr. Kyoung Kim ("Dr. Kim"); Dr. Akhand ("Dr. Akhand"); Dr. K. Ott ("Dr. Ott"); Robert Bentivegna ("Bentivegna"); Carl Koenigsmann ("Koenigsmann"); and Frederick N. Bernstein ("Bernstein") (collectively, "Defendants"), under 42 U.S.C. § 1983. (*See generally* Compl. (Dkt. No. 2).) Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Not. of Mot.; Defs.' Mem. in Supp. of Mot. ("Defs.' Mem") (Dkt. Nos. 57, 58).) For the reasons stated herein, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Complaint and exhibits referenced therein and are taken as true for the purpose of resolving the instant Motion.[1,2]

Plaintiff was an inmate at Green Haven Correctional Facility ("Green Haven") when he first complained to a medical provider that he was experiencing back pain. (Compl. ¶ 1.) An x-ray report dated July 2010 indicates that the provider at Green Haven noted that the L5 "disc space [was] narrowed" but that "no action" was required at the time. (Compl. Ex. A at 2 (Dkt. No. 2-1).)[3] Plaintiff's back problems persisted, and in March 2013, Plaintiff underwent another x-ray at Green Haven, which noted "slight narrowing of L5-S1 disc space" but "no significant degen[eration]" or "[a]bnormality." (Compl. Ex. B at 5 (Dkt. No. 2-1).) The provider noted that a follow up would be arranged with a primary provider. (*Id*.) Plaintiff was provided with physical therapy and an MRI in October 2014. (Compl. ¶ 2.) The MRI showed that there was "mild loss of disc space height" and "mild broad-based disc bulging" in Plaintiff's L5 disc. (Compl. Ex. B at 6.)

Plaintiff alleges that in 2015, he "received a back brace" to deal with his pain but requested to consult with an orthopedic doctor because he was experiencing "swelling" in his

---

[1] Plaintiff attached several documents to the Complaint and refers to them throughout. The Court will consider these to the extent necessary. *See Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (noting that a district court may consider "documents appended to the complaint or incorporated in the complaint by reference" (citation omitted)).

[2] The Court notes that the Complaint is occasionally difficult to understand. The Factual Background represents the Court's best attempt at understanding Plaintiff's allegations.

[3] To avoid confusion, the Court notes that any citations to the Complaint Exhibits are to the ECF-stamped page numbers.

"right hip, leg, foot, [and] toes." (Compl. ¶ 3.) At this time, Plaintiff allegedly began experiencing "discomfort sleeping, resting, sitting, [] walking and standing." (*Id*.) Around the beginning of 2016, Plaintiff's provider changed to Dr. Wolf-Friedman, who sent Plaintiff to more physical therapy. (*Id*.) In summer 2016, Plaintiff filed grievances, complaining that his medical treatment and request to see a specialist were being delayed. (*Id*.; *see generally* Compl. Ex. C (Dkt. No. 2-1).) After filing these grievances, Plaintiff was taken to an orthopedic doctor who determined that Plaintiff had "foot drop," and another MRI was conducted in August 2016. (Compl. ¶ 4.) In September 2016, Petitioner had an EMG conducted by an orthopedic doctor, who diagnosed Plaintiff with "right L5 radiculopathy" and noted that the "findings correlate with the patient's symptoms." (*Id*. ¶ 5; Compl. Ex. E at 19 (Dkt. No. 2-1).) In November 2016, Plaintiff was provided with a foot brace, and in December 2016, he underwent another round of physical therapy, which allegedly culminated in a recommendation for surgery. (Compl. ¶ 6.) At some point in late 2016, Plaintiff's provider changed to Dr. Kim, who allegedly denied the recommendation to send Plaintiff to a specialist for surgery. (*Id*.) Although Plaintiff does not specifically describe when the next change in provider occurred, his attached exhibits demonstrate that he was then transferred to the care of Dr. Akhand sometime before May 2017. (Compl. Ex. G at 28 (Dkt. No. 2-1).) Plaintiff alleges that, during his time at Green Haven, he wrote to facility health service directors Bernstein, Bentivegna, and Koenigsmann regarding his continued pain and belief that he needed surgery. (Compl. ¶ 7.)

In October 2017, Plaintiff was transferred to Elmira and placed under the care of Dr. Ott. (Compl. ¶¶ 8.) Plaintiff allegedly gave Dr. Ott all of the paperwork pertaining to his medical history. (*Id*. at ¶ 9.) He also requested a back brace and foot brace but was allegedly told that he would not receive a back brace and would no longer be given pain medication. (*Id*. ¶¶ 10–11.)

3

In January 2017, Plaintiff once again consulted with an orthopedic doctor who allegedly recommended surgery. (*Id.* ¶ 12.) After this recommendation, Plaintiff alleges that he was "schedule[d] and re-schedule[d] to see a different orthopedic doctor" and "during this consultation he stated that [Plaintiff had] to go through this whole procedure all over to receive surgery." (*Id.*) A response to one of Plaintiff's grievances at Elmira, dated December 2017, indicates that a request for Plaintiff to see an orthopedic surgeon was placed on November 6, 2017 and that Dr. Ott had determined that Plaintiff did not need a lower back brace. (Compl. Ex. G at 33.) Plaintiff wrote multiple letters to various Department of Corrections and Community Supervision ("DOCCS") personnel complaining about his ongoing pain and delayed surgery, one of which indicates that he had an appointment with an orthopedic doctor in January 2018. (Compl. Ex. H at 45 (Dkt. No. 2-1).) It appears Plaintiff had not had the surgery at the time he filed the Complaint, March 16, 2018. (*See generally* Compl.)

Based on these allegations, Plaintiff's Complaint contains three counts of violations of his rights under the Eighth and Fourteenth Amendments against the Defendants for "delayed/denied necessary medical treatment" and one count of "[s]upervisory [l]iability" as to Bentivegna, Bernstein, and Koenigsmann. (Compl. ¶¶ 15–19.)

B. Procedural Background

Plaintiff filed his Complaint and Request to Proceed In Forma Pauperis ("IFP") on March 16, 2018. (*See generally* Dkt. No. 1; Compl.) The Plaintiff was granted IFP status on March 20, 2018. (*See* Dkt. No. 5.) On August 14, 2018, Plaintiff requested a preliminary injunction from the Court ordering that Plaintiff be provided with the surgery he believed he needed, (Dkt. No. 46), which was denied by the Court on August 16, 2018, (Dkt. No. 47). On October 15, 2018, the Defendants filed the Motion. (*See* Not. of Mot.; Defs.' Mem.) On October 17, 2018,

4

Plaintiff filed an Opposition.  (Pl.'s Decl. in Opp'n of Mot. ("Pl.'s Decl."); Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. Nos. 60, 61).)  On November 30, 2018, Defendants filed their Reply in Support of the Motion.  (*See* Defs'. Reply in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 71).)

## II.  Discussion

Defendants argue that Plaintiff fails to state an Eighth Amendment medical indifference claim or any other constitutional violation, (Defs.' Mem. 5–12), that Plaintiff fails to plausibly allege the personal involvement of Bentivegna, Koenigsmann, and Bernstein, (*id*. at 13–14), that Plaintiff has failed to exhaust administrative remedies as to his claim against Dr. Ott, (*id*. at 15–16), and that Defendants are entitled to qualified immunity, (*id*. at 16–19).  The Court addresses the arguments as needed below.

### A.  Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (quotation marks and alteration omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

5

complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . . " (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

6

(S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B.  Analysis

1.  Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citations omitted). The exhaustion requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 520, 532 (2002), and includes actions for

7

monetary damages even if monetary damages are not available as an administrative remedy, *see Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citations, alterations, and quotation marks omitted). Indeed, the PLRA demands "strict compliance with the grievance procedure . . . , or else dismissal must follow inexorably." *McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (citations, alteration, and quotation marks omitted). Exhaustion must occur *prior* to Plaintiff's filing suit; "[s]ubsequent exhaustion after suit is filed therefore is insufficient." *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled in part on other grounds by Porter*, 534 U.S. 516.

The grievance program applicable here is the DOCCS Inmate Grievance Program ("IGP"), which provides for a "three-step grievance process." *See Colon v. Annucci*, 344 F. Supp. 3d 612, 641 (S.D.N.Y. 2018).

> To initiate the process, an inmate must file a written complaint with the Inmate Grievance Resolution Committee ("IGRC"), a facility committee composed of inmates and appointed staff members. *See* N.Y.C.R.R. § 701.4–5 . . . . Second, the inmate can appeal an unfavorable IGRC determination to the superintendent of the facility. *See* N.Y.C.R.R. § 701.5([c]) . . . . Finally, an inmate can appeal an unfavorable superintendent's determination to the Central Office Review Committee ("CORC"). *See* N.Y.C.R.R. § 701.[7]([c]) . . . ; Directive No. 4040.

*Amador v. Andrews*, 655 F.3d 89, 96–97 (2d Cir. 2011) (some citations omitted); *see also Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *1 (S.D.N.Y. Sept. 8, 2016) (describing three-step IGP procedure), *appeal dismissed*, 2016 WL 10100723 (2d Cir. Dec. 8, 2016). Grievances alleging "employee misconduct meant to annoy, intimidate[,] or harm an inmate" are subject to an expedited administrative review—they are immediately referred to the superintendent of the facility and must also be exhausted through a final appeal to CORC. *Amador*, 655 F.3d at

8

97 (citing 7 N.Y.C.R.R. §§ 701.2(e), 701.8(b)–(h).). Only after completing all three steps of the IGP may an inmate initiate suit, see Ross, 136 S. Ct. at 1856; Williams, 829 F.3d at 122, "provided no exception to exhaustion applies," White v. Westchester County, No. 18-CV-730, 2018 WL 6726555, at *6 (S.D.N.Y. Dec. 21, 2018).

Exhaustion is generally an affirmative defense, so Defendants bear the burden of proving failure to exhaust. See McCoy, 255 F. Supp. 2d at 247–48. Inmates are "not required to specially plead or demonstrate exhaustion in their complaints," Jones v. Bock, 549 U.S. 199, 216 (2007), but dismissal may be appropriate at the motion to dismiss stage "where failure to exhaust is clear on the face of the complaint," Brinson v. Kirby Forensic Psych. Ctr., No. 16-CV-1625, 2018 WL 4680021, at *6 (S.D.N.Y. Sept. 28, 2018) (citations omitted).

Here, Defendants correctly argue that it is "clear on the face of the [C]omplaint" that Plaintiff failed to exhaust his administrative remedies as to his allegations pertaining to medical care at Elmira before filing his Complaint. Id. In the Complaint, Plaintiff wrote that his two grievances at Elmira, #48-106 and #4814847, are still "pending," in contrast to his other grievances, which had already been appealed to the CORC. (See Compl. 11.) Even if the Elmira grievances had run their course in the DOCCS IGP since then, "[s]ubsequent exhaustion after suit is filed . . . is insufficient." Neal, 267 F.3d at 122. Accordingly, Plaintiff's claims as to Dr. Ott and Dr. Akhand, his two providers at Elmira, are dismissed due to failure to exhaust administrative remedies.[4] See Perkins v. Perez, No. 17-CV-1341, 2019 WL 1244495, at *8

---

[4] The Court also notes that Plaintiff made no allegations suggesting that the circumstances call for any exception to exhaustion. See Davis v. Grant, No. 15-CV-5359, 2019 WL 498277, at *6 (S.D.N.Y. Feb. 8, 2019) (noting that there are three articulated circumstances where administrative remedies may be considered unavailable: "(1) where 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) where the procedure is 'so opaque that it becomes, practically speaking,

(S.D.N.Y. Mar. 18, 2019) (dismissing claim where plaintiff "essentially admits" that he failed to file grievances and noting that submitting letters to prison officials instead "cannot satisfy the exhaustion requirement" (quotation marks omitted) (citing cases)); *Gayot v. Perez*, No. 16-CV-8871, 2018 WL 6725331, at *6–7 (S.D.N.Y. Dec. 21, 2018) (dismissing claim where plaintiff makes no showing that exhaustion exceptions would apply and the amended complaint made clear that plaintiff did not give CORC an opportunity to "render[] a final determination of [the] [p]laintiff's grievance"); *McGee v. New York City*, No. 16-CV-9549, 2018 WL 565721, at *3 (S.D.N.Y. Jan. 24, 2018) (dismissing complaint where "it is clear from the face of [plaintiff's] complaint" that plaintiff "failed to proceed past the first step of the IGP, and has thus failed to satisfy the PLRA's exhaustion requirement" (citation omitted)).

### 2. Eighth and Fourteenth Amendment Claims

Plaintiff refers to the Eighth Amendment right to be "free from cruel and unusual punishment" in his Complaint and refers to the quality of his medical care throughout, so the Court liberally reads his Complaint to allege claims of deliberate indifference to Plaintiff's medical needs. (*See generally* Compl.)

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976))). "There are two elements to a claim of deliberate indifference to a serious medical condition." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009), *overruled in part on other grounds by Darnell v. Pineiro*, 849 F.3d 17 (2d Cir.

---

incapable of use' such that 'no ordinary prisoner can discern or navigate it'; or (3) where 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation'" ((quoting *Ross*, 136 S. Ct. at 1859–60)).

10

2017). "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious," *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted), which requires that "the prisoner must prove that his [or her] medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain," *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citation and quotation marks omitted); *accord Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Analyzing this objective requirement requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280 (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003); *see also Santana v. City of New York*, No. 13-CV-3034, 2014 WL 1870800, at *5 (S.D.N.Y. May 8, 2014) (same), *appeal dismissed*, No. 14-1748 (2d Cir. May 8, 2014). However, the Second Circuit has cautioned that the analysis operates somewhat differently depending on whether the inmate is alleging that medical care was simply delayed, or fully denied. As the Second Circuit has explained:

> Th[e] [objective] inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner. For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious . . . . In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.

11

*Salahuddin*, 467 F.3d at 280 (alterations, citations, and quotation marks omitted); *see also Davis v. McCready*, No. 14-CV-6405, 2016 WL 796847, at *4 (S.D.N.Y. Feb. 22, 2016) (same).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citation omitted). Under that prong, the question is whether defendants "'knew of and disregarded an excessive risk to [a plaintiff's] health or safety' and . . . [were] 'aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.'" *Caiozzo*, 581 F.3d at 72 (alterations omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (citation and quotation marks omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (internal quotation marks omitted). In contrast, mere negligence is not enough to state a claim for deliberate indifference. *See Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation and quotation marks omitted). Moreover, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Banks v. Annucci*, 48 F. Supp. 3d 394, 407–08 (N.D.N.Y. 2014) (same), *appeal dismissed*, No. 15-224 (July 10, 2015).

Here, Plaintiff has failed to plausibly allege facts that support the first inquiry, *i.e.*, "whether the prisoner was actually deprived of medical care." *Salahuddin*, 467 F.3d at 279. It is undisputed that Plaintiff received some form of medical care while at Green Haven.[5] The Complaint indicates that Plaintiff received medication, physical braces, MRIs and other examinations, and multiple appointments with specialists. (*See* Compl. ¶¶ 1–7.) Accordingly, the proper inquiry is whether Plaintiff received adequate care, which requires the Court "to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Lloyd v. Lee*, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008) (quoting *Salahuddin*, 467 F.3d at 280). Plaintiff has failed to show that the treatment he received at Green Haven was so inadequate that it "pose[d] an unreasonable risk of serious damage to his health." *Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 537 (S.D.N.Y. 2015) (quoting *Walker*, 717 F.3d at 125). Although Plaintiff believed that he needed surgical treatment for his back problems, a "prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities." *Dichiara v. Pataki*, No. 06-CV-6123, 2007 WL 749742, at *3 (E.D.N.Y. Mar. 7, 2007). Plaintiff's Complaint demonstrates that the Green Haven medical providers—who, as described above, provided medication, multiple examinations, a back brace, and a foot brace in response to Plaintiff's pain—"act[ed] reasonably in response to [Plaintiff's] condition[, and therefore,] cannot be found liable under the Eighth Amendment." *Lloyd*, 570 F. Supp. 2d at 566 (citation omitted); *see also Goris v. Breslin*, 402 F. App'x 582, 585 (2d Cir. 2010) (holding that deliberate indifference did not occur where defendant doctor "refus[ed] to

---

[5] As discussed above, the Court already dismissed Plaintiff's claims pertaining to medical care at Elmira because Plaintiff failed to exhaust his administrative remedies there. Accordingly, for the purposes of this Opinion, the Court will only consider the sufficiency of Plaintiff's Eighth Amendment deliberate medical indifference claims for the events that occurred at Green Haven.

prescribe surgery instead of physical therapy" and failed to "expeditiously arrange a follow-up with an orthopedist"); *Royal v. Annucci*, No. 16-CV-6517, 2017 WL 3207805, at *6 (S.D.N.Y. July 27, 2017) (dismissing deliberate indifference claim where defendant doctor refused to recommend surgery for pain near plaintiff's thumb joint despite the fact that "plaintiff's second facility doctor, physical therapist, and surgeon all allegedly recommended surgery").

Accordingly, Plaintiff has failed to plausibly allege deliberate indifference under the Eighth Amendment, and his claims are dismissed as to his medical providers at Green Haven, Dr. Wolf-Friedman and Dr. Kim.[6]

### 3. Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

---

[6] Because Plaintiff failed to plausibly allege inadequate care, the Court does not at this time move on to the second, subjective inquiry—whether a prison official "acted with deliberate indifference to [Plaintiff's] medical condition." *Lloyd*, 570 F. Supp. 2d at 567 (citation and quotation marks omitted). The Court notes, however, that none of Plaintiff's allegations at this point indicates that any medical provider acted with the requisite mental state of criminal recklessness, *see Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003), which would require plausible allegations that a state official "[knew] of [Plaintiff's conditions] and disregard[ed] an excessive risk to [Plaintiff's] health or safety," *Chance*, 143 F.3d at 702 (quoting *Farmer*, 511 U.S. at 837).

14

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Defendants argue that Plaintiff has failed to plausibly allege personal involvement as to Bentivegna, Koenigsmann, and Bernstein. (Defs.' Mem. 13–15.) The Court agrees.

Plaintiff only mentions Bentivegna, Koenigsmann, and Bernstein to the extent they were recipients of his various grievances regarding his back pain at Green Haven. (Compl. ¶ 7.) To begin, the Court has already determined that Plaintiff's recounting of his medical issues at Green Haven have not plausibly alleged a constitutional violation. It follows that none of their actions or inactions following those grievances could constitute direct participation in a constitutional violation, "fail[ing] to remedy" an ongoing constitutional violation, "creat[ing] a policy or custom" of violating Plaintiff's constitutional rights, or demonstrating "gross[] negligen[ce]" or "deliberate indifference" to Plaintiff's constitutional rights. *See Grullon*, 720 F.3d at 139. Moreover, even if there were a plausibly-alleged underlying constitutional violation, Plaintiff has failed to allege facts that go beyond a claim of "supervisory liability," (Compl. ¶¶ 18–19), which is an insufficient basis for liability in § 1983 claims. *See, e.g.*, *Sharma v. D'Silva*, 157 F. Supp. 3d 293, 306 (S.D.N.Y. 2016) (holding that defendants who were facility health service directors could not be held liable for failing to "ensur[e] that a [specialist] examined [the] [p]laintiff");

15

*Joyner v. Greiner*, 195 F. Supp. 2d 500, 506–07 (S.D.N.Y. 2002) (dismissing claims against superintendent and head physician where defendants either did not respond to plaintiff's grievances regarding medical care or responded, asserting that there was "nothing [the defendant] could do" (quotation marks omitted)); *see also Banks*, 48 F. Supp. 3d at 416 ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct." (quoting *Polk County v. Dodson*, 454 U.S. 312, 325 (1981))).

Accordingly, Plaintiff's claims against Bentivegna, Koenigsmann, and Bernstein are also dismissed.

### III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted. Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice.

For the Elmira claims, Plaintiff may reinstitute suit once he can show that he has administratively exhausted all remedies. As to the Green Haven clams, if Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint. The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to

consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion, (Dkt. No. 57), and mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: September 24, 2019
        White Plains, New York

KENNETH M. KARAS
United States District Judge