UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAMES ROBINSON,

                      Plaintiff,

v.

JANICE LYNN WOLF-FRIEDMAN, et al.,

                      Defendants.
----------------------------------------------------------X

**MEMORANDUM OPINION
AND ORDER**

18-CV-02409 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff James Robinson ("Plaintiff"), presently incarcerated at the Auburn Correctional Facility, and proceeding *pro se* and *in forma pauperis*, commenced this action with the filing of a Complaint on March 16, 2018. (Doc. 2, "Compl."). Plaintiff asserted, under 42 U.S.C. § 1983, Eighth Amendment deliberate indifference to medical needs claims against Dr. Janice Lynn Wolf-Friedman ("Dr. Wolf-Friedman"), Dr. Kyoung Kim ("Dr. Kim"), Dr. Akhand[1] ("Dr. Akhand"), Dr. K. Ott ("Dr. Ott"), Robert Bentivegna ("Bentivegna"), Carl Koenigsmann ("Koenigsmann"), and Frederick N. Bernstein ("Bernstein" and collectively "Defendants") for treatment Plaintiff received at either the Green Haven Correctional Facility ("Green Haven") or the Elmira Correctional Facility ("Elmira").

Defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and, in an Opinion and Order dated September 24, 2019 (the "Prior Order"), Judge Karas, who presided over this case before it was reassigned to me on April 16, 2020, granted Defendants' motion. (Doc. 82, "Op. & Order" at 16). Judge Karas also granted Plaintiff leave to file an amended complaint. (*Id.*). As to the claims accruing at Green Haven, Judge Karas

---

[1] While Plaintiff names as a Defendant Dr. "Ahkand," the correct spelling is Dr. "Akhand." Thus, the Court uses "Dr. Akhand" throughout.

directed Plaintiff to "correct the deficiencies identified in this Opinion." (*Id.*). As to the claims accruing at Elmira, Judge Karas instructed Plaintiff that he "may reinstitute suit once he can show that he has administratively exhausted all remedies." (*Id.*).

Plaintiff filed a First Amended Complaint ("FAC") on November 12, 2019.[2] (Doc. 85, "FAC"). The FAC names the same seven Defendants and again alleges Eighth Amendment deliberate indifference to medical needs claims. By motion dated May 15, 2020, Defendants moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 93; Doc. 94, "Defs. Br."). Defendants' motion is unopposed.[3]

For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

The facts, as recited below, are taken from Plaintiff's FAC, which is difficult to follow, and the exhibits attached to Plaintiff's original Complaint.[4] In May 2010, while incarcerated at

---

[2] The caption of the FAC indicates that it is filed in case number 19-CV-10418. A review of the publicly available docket for 19-CV-10418 shows that the FAC was incorrectly assigned a new case number and was thereafter filed in this action. *See Robinson v. Freidman*, No. 19-CV-10418 (Doc. 2).

[3] Plaintiff's brief in opposition to Defendants' motion was due June 17, 2020. (Doc. 92). The docket reflects that Plaintiff was mailed a copy of the Order setting forth the briefing schedule for Defendants' motion (Mar. 19, 2020 Entry) as well as a copy of Defendants' motion (Doc. 93 at 2). By Order dated July 28, 2020, the Court *sua sponte* extended Plaintiff's time to file a brief in opposition to Defendants' motion. (Doc. 95). The July 28 Order directed Defendants to "mail a copy of this Order to Plaintiff and provide proof of service on the docket." (*Id.*). No proof of service appears on the docket and the Court is unable to determine whether Plaintiff received a copy of the Court's July 28 Order. Nonetheless, because Plaintiff has failed to oppose Defendants' motion for more than seven months, and has not communicated with the Court in any way since February 4, 2020 (Doc. 89), the Court will deem the motion fully submitted and adjudicate it at this time.

[4] After Plaintiff filed the FAC, Defendants notified the Court that while the FAC repeatedly referred to exhibits, no exhibits were attached thereto. (Doc. 86). Judge Karas directed Plaintiff to file the exhibits referenced in the FAC. (Doc. 87). When Plaintiff did not file the exhibits, Judge Karas issued an Order to Show Cause directing Plaintiff to show cause why the action should not be dismissed for failure to prosecute. (Doc. 88). Plaintiff responded to the show cause order and indicated that the exhibits cited to in the FAC were references to the exhibits submitted in support of Plaintiff's original Complaint. (Doc. 89). Judge Karas then informed Defendants that they should refer to the exhibits attached to the original Complaint when answering or moving to dismiss the FAC. (Doc. 90). Therefore, on the present motion, the Court considers the exhibits submitted in support of Plaintiff's original Complaint. *See Leonard F. v.*

Green Haven, Plaintiff first complained about lower back pain and got an x-ray. (FAC ¶ 1; Exs. at 2-3).[5] In March 2013, Plaintiff got a second x-ray and physical therapy. (FAC ¶ 2). After filing numerous sick call requests related to his back pain, in October 2014, Plaintiff got an MRI. (*Id.*). The notes from the MRI indicate that Plaintiff reported having "non-radiating back pain" and the MRI revealed "mild loss of disc space height" and "mild . . . disc bulging" on the left side of Plaintiff's back. (Exs. at 6).

At some time thereafter, Plaintiff's provider was changed to Dr. Wolf-Friedman and Plaintiff went through a second regimen of physical therapy. (FAC ¶ 3). Plaintiff's condition allegedly worsened, and he received a back brace. (*Id.*). Plaintiff requested that he be seen by an orthopedic doctor because, contrary to the MRI's findings, the right side of his back was causing pain rather than the left side, and he was "experiencing discomfort standing, sleeping, resting, sitting, and walking which was effecting [sic] his daily activities." (*Id.*). On August 30, 2016, Plaintiff was examined by an orthopedic doctor at the Putnam Health Center and a second MRI was performed. (*Id.* ¶ 4; Exs. at 14). The orthopedic doctor noted "mild disc bulges," and, according to Plaintiff, the doctor determined that Plaintiff had "right foot drop." (FAC ¶ 4).

Plaintiff's provider then changed to Dr. Akhand, and Plaintiff discussed with Dr. Akhand his lower back pain. (*Id.*). Dr. Akhand allegedly told Plaintiff that back injections would not help his pain and recommended that Plaintiff have surgery. (*Id.*). On September 21, 2016, Plaintiff was examined by a second orthopedic doctor. (*Id.* ¶ 5; Exs. at 17-19). Plaintiff reported having "right foot drop" and "tingling in the right foot." (Exs. at 17). The doctor notes indicate that

---

*Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (noting that a district court may consider "documents appended to the complaint or incorporated in the complaint by reference" (citation omitted)); (*see also* Doc. 2-1, "Exs.").

[5] When citing to paragraphs in the FAC, the Court refers to the numbered paragraphs that begin on page 10. When citing to the Exhibits filed in support of Plaintiff's original Complaint, the Court refers to the pagination generated by ECF.

Plaintiff was diagnosed with "right L5 radiculopathy" and that the doctor's "findings correlate with the patient's symptoms." (*Id.* ¶ 5; Exs. at 19). Plaintiff had a third regimen of physical therapy and was issued a foot brace. (FAC ¶ 6). Thereafter, Plaintiff's provider changed a third time, to Dr. Kim. (*Id.*).

Plaintiff avers that the treatment he was provided by Dr. Wolf-Freidman, Dr. Akhand, and Dr. Kim at Green Haven was insufficient and that he wrote numerous letters to Bentivegna, Koenigsmann, and Bernstein regarding the allegedly inadequate treatment. (*Id.* ¶ 7). Specifically, Plaintiff claims that the failure to refer him to get surgery or see a specialist was a violation of his Eighth Amendment rights. (*Id.*).

On October 21, 2017, Plaintiff was transferred to Elmira and requested sick-call due to the "chronic pain in his hips, back, leg, foot, [and] toes on his right side" (*Id.* ¶ 8). Plaintiff also "request[ed] his eye drops . . . [and] his back brace and foot brace." (*Id.*). On November 21, 2017, Plaintiff was examined by Dr. Ott who informed Plaintiff that he "would have to give up his back brace and would no longer receive[] his pain medication." (*Id.* ¶¶ 8-10). After filing multiple grievances, Plaintiff was examined by an orthopedic doctor who allegedly again recommended surgery. (*Id.* ¶¶ 11-12). After this recommendation, Plaintiff avers that he was "schedule[d] and re-schedule[d] to see a different orthopedic doctor." (*Id.* ¶ 12). Plaintiff alleges that Dr. Ott ignored the recommendation that Plaintiff get surgery and denied him adequate medical treatment. (*Id.* ¶ 13).

Plaintiff claims that on an unidentified date after "the court issued a[n] order for [plaintiff] to have surgery" he did have surgery and Plaintiff no longer has "chronic pain . . . but still ha[s] a swollen foot [and] toes." (*Id.* ¶ 14). According to Plaintiff it took Defendants too

long to understand that the pain Plaintiff was experiencing was on his right side, not his left side. (*Id.*).

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs are often unfamiliar with the formalities of pleading requirements, courts must apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing the complaint of an individual represented by counsel. *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, [] 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009))).

When deciding an unopposed motion to dismiss, as is the case here, "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-5286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). Therefore, it is appropriate for the Court to test the

legal sufficiency of Plaintiff's FAC even without the benefit of a brief in opposition to Defendants' motion from Plaintiff.

## ANALYSIS

Plaintiff asserts claims under 42 U.S.C. § 1983 for (1) deliberate indifference to medical needs in violation of his Eighth Amendment against Dr. Wolf-Friedman, Dr. Akhand, Dr. Kim, and Dr. Ott, and (2) supervisor liability against Bentivega, Bernstein, and Koenigsmann. Judge Karas found, in the Prior Order, that these same claims asserted against the same Defendants were deficient for various reasons. In light of those findings, and assuming familiarity thereof, the Court's analysis herein is limited to whether the FAC cures the deficiencies identified in the Prior Order.

### I.    PLRA Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Judge Karas found that Plaintiff's claims related to conduct at Elmira should be dismissed because it was "'clear on the face of the Complaint' that Plaintiff failed to exhaust his administrative remedies as to his allegations pertaining to medical care at Elmira before filing his Complaint." (Op. & Order at 9 (quoting *Brinson v. Kirby Forensic Psych. Ctr.*, No. 16-CV-1625, 2018 WL 4680021, at *6 (S.D.N.Y. Sept. 28, 2018))). Specifically, the Court noted that Plaintiff alleged that the grievances he filed related to the medical care he received at Elmira were still "pending" and thus the administrative remedy process had not run its course. (*Id.* (citing Compl. at 11)). The Court noted further, "that Plaintiff made no allegations suggesting that the circumstances call for

any exception to [PLRA] exhaustion" requirements. (*Id.* at 9, n.4). Plaintiff was instructed, as to any claims related to the medical care he received at Elmira, that he "may reinstitute suit once he can show that he has administratively exhausted all remedies." (*Id.* at 16).

The FAC does not allege that Plaintiff has exhausted his administrative remedies and does not identify any reasons why the Court should make an exception to the PLRA's exhaustion requirements. (FAC at 17). Since Plaintiff's claims regarding the inadequate medical care he received at Elmira relate to Dr. Ott only, the Court finds that Plaintiff's claims against Dr. Ott are barred for failure to exhaust administrative remedies and hereby dismisses Plaintiff's claim against Dr. Ott.[6]

## II.   Eighth Amendment Violation

Judge Karas held that Plaintiff had failed to state an Eighth Amendment claim for deliberate indifference to his medical needs related to the treatment he received at Green Haven because Plaintiff's allegations were insufficient to satisfy the objective prong of an Eighth Amendment claim. Specifically, Judge Karas held:

> It is undisputed that Plaintiff received some form of medical care while at Green Haven. The Complaint indicates that Plaintiff received medication, physical braces, MRIs and other examinations, and multiple appointments with specialists. (*See* Compl. ¶¶ 1-7.) Accordingly, the proper inquiry is whether Plaintiff received adequate care, which requires the Court "to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Lloyd v. Lee*, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008) (quoting *Salahuddin*, 467 F.3d at 280). Plaintiff has failed to show that the treatment he received at Green Haven was so inadequate that it "pose[d] an unreasonable risk of serious damage to his health."

---

[6] The FAC asserts that Dr. Akhand provided medical care to Plaintiff at Green Haven, not at Elmira. (FAC at 17). Defendants do not dispute that Dr. Akhand is employed at Green Haven and provided medical care to Plaintiff at Green Haven. Furthermore, both the Complaint and FAC indicate that Dr. Akhand was employed at Green Haven. (Compl. at 9; FAC at 1). Accordingly, claims against Dr. Akhand will be considered *infra*.

*Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 537
(S.D.N.Y. 2015) (quoting *Walker*, 717 F.3d at 125).

(Op. & Order at 13 (internal footnote omitted)). A careful and thorough review of the FAC reveals that Plaintiff included one additional allegation in support of his Eighth Amendment claim. Specifically, Plaintiff alleges that one aspect of the allegedly inadequate medical care he was provided was that medical providers initially identified an issue with Plaintiff's left side, but in reality there was an issue with his right side "which could be observed by the way he walk[ed]." (*Compare* FAC ¶ 7, *with* Compl. ¶ 7). The addition of this single allegation does not alter the conclusion reached in the Prior Order. While the October 2014 MRI report indicates that Plaintiff had "mild loss of disc space height" and "mild . . . disc bulging" on the left side of Plaintiff's back (Exs. at 6), thereafter, Plaintiff repeatedly received treatment related to pain on the right side of his body. (FAC ¶ 4 (On July 28, 2016, Plaintiff alleges that an orthopedic doctor determined that he has "right foot drop"); *id.* (Plaintiff discussed with Dr. Akhand whether he should receive back injections on his left or right side); *id.* ¶ 5 (on February 3, 2016, Plaintiff was examined by an orthopedic doctor after complaints of "right foot drop" and "tingling in the right foot" and the doctor reported that the examination "is suggestive of right L5 radiculopathy")). To address Plaintiff's condition, he was examined by doctors on multiple occasions (*id.* ¶¶ 4-5), issued a foot brace (*id.* ¶ 6), and provided physical therapy at least three times (*id.*).

Most significantly, Plaintiff added an allegation in the FAC indicating that he did, at some point, have surgery and that he "do[esn't] have chronic pain no [sic] more, but still ha[s] a swollen foot [and] toes." (*Id.* ¶ 14). Plaintiff's allegations demonstrate clearly that he was repeatedly treated for his medical conditions and do not establish that the treatment was so inadequate that it posed an unreasonable risk of serious damage to his health. Thus, no Eighth

Amendment claim lies. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986))). The Court finds that Plaintiff failed to cure the deficiencies identified in the Prior Order. The FAC simply does not include allegations which permit the plausible inference that Plaintiff can satisfy the objective prong of an Eighth Amendment claim.[7] Accordingly, Plaintiff's claims against the medical providers at Green Haven—Dr. Wolf-Friedman, Dr. Akhand, and Dr. Kim—are dismissed.

III.   <u>Personal Involvement</u>

As to Plaintiff's supervisory liability claim, Judge Karas dismissed Plaintiff's claims finding that Plaintiff had failed to allege plausibly that Bentivegna, Koenigsmann, and Bernstein were personally involved in any alleged constitutional deprivation. (Op. & Order at 14-16). Specifically, the Court found:

> Plaintiff only mentions Bentivegna, Koenigsmann, and Bernstein to the extent they were recipients of his various grievances regarding his back pain at Green Haven. (Compl. ¶ 7.) To begin, the Court has already determined that Plaintiff's recounting of his medical issues at Green Haven have not plausibly alleged a constitutional violation. It follows that none of their actions or inactions following those grievances could constitute direct participation in a constitutional violation[.] . . . Moreover, even if there were a plausibly-alleged underlying constitutional violation, Plaintiff has failed to allege facts that go beyond a claim of "supervisory liability," (Compl. ¶¶ 18-19), which is an insufficient

---

[7] The Prior Order noted that while it did not need to reach the question of whether Plaintiff's allegations were sufficient to satisfy the subjective prong of a deliberate indifference claim, "none of Plaintiff's allegations at this point indicates that any medical provider acted with the requisite mental state of criminal recklessness." (Op & Order at 14, n.6). The Court need not, and does not, reach the question of whether Plaintiff's allegations are sufficient to satisfy the subjective prong, but notes that Plaintiff has not added any allegations regarding the Defendants' mental state.

basis for liability in § 1983 claims. *See, e.g.*, *Sharma v. D'Silva*, 157 F. Supp. 3d 293, 306 (S.D.N.Y. 2016) (holding that defendants who were facility health service directors could not be held liable for failing to "ensur[e] that a [specialist] examined [the] [p]laintiff"); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506–07 (S.D.N.Y. 2002) (dismissing claims against superintendent and head physician where defendants either did not respond to plaintiff's grievances regarding medical care or responded, asserting that there was "nothing [the defendant] could do" (quotation marks omitted)); *see also Banks [v. Annucci]*, 48 F. Supp. 3d [394,] 416 [(N.D.N.Y. 2014)] ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct." (quoting *Polk County v. Dodson*, 454 U.S. 312, 325 (1981))).

(Op. & Order at 15-16). The FAC does not include any additional allegations regarding the supervisory liability claims against Bentivegna, Koenigsmann, and Bernstein. Accordingly, the claims are dismissed again for lack of personal involvement.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Here, the Court dismisses Plaintiff's Complaint with prejudice as any amendment would be futile and Plaintiff has already had an opportunity to amend his pleadings.[8] The Court directs the Clerk to terminate the pending motion (Doc. 93) and terminate this action. The Court further directs the

---

[8] It appears to the Court that Plaintiff has abandoned this litigation. Plaintiff did not file a brief in opposition to Defendants' motion to dismiss and has not communicated with the Court in any way since February 4, 2020 (Doc. 89). Thus, and separately, the Court finds that dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b) would be appropriate. *See Hutter v. Countrywide Bank, N.A.*, No. 09-CV-10092, 2017 WL 108059, at *3 (S.D.N.Y. Jan. 9, 2017) ("[W]hen a plaintiff abandons or neglects a cause of action, it can be dismissed for want of prosecution." (citing Fed. R. Civ. P. 41(b))).

Clerk to mail a copy of this Memorandum Opinion and Order to Plaintiff at the address provided on the docket.

Dated: New York, New York
      February 5, 2021

SO ORDERED:

_____

Philip M. Halpern
United States District Judge